**No. 23-4132**

_____

**UNITED STATES COURT OF APPEALS**

**FOR THE**

**NINTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**

                Plaintiff-Appellee,

    v.

**DANIEL KITTSON,**

                Defendant-Appellant.

_____

Appeal from the United States District Court
for the District of Oregon
No. 3:21-cr-00075-IM
The Honorable Karin J. Immergut

_____

**APPELLANT'S OPENING BRIEF**

_____

Michael Charles Benson
C. Renée Manes
Assistant Federal Public Defenders
101 SW Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123

Attorneys for Defendant-Appellant

# TABLE OF CONTENTS

**Page**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement Of Jurisdiction And Timeliness . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement Of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1. Given that the statute criminalizing possession and transfer of machineguns, 18 U.S.C. § 922(o), does not criminalize an attempted transfer and exempts transfers to the government from criminal culpability in subsection (o)(2)(A):

   a) does a transfer to an undercover government agent violate the statute?

   b) should the jury have been instructed on the terms of the statute?

2. Whether a near total ban on the possession of machineguns is consistent with the Nation's historical tradition of firearms regulation under the Second Amendment, based on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)?

3. Whether the jury instruction that a functioning magazine was irrelevant to the question of whether a weapon qualified as a machinegun – given over Mr. Kittson's objection – requires reversal because: it was an erroneous statement of the law; directed a verdict on a contested element of the offense; deprived Mr. Kittson of critical constitutional rights including his right to be presumed innocent; to require the government to prove his guilt of all elements of the offense beyond a reasonable doubt; to confront the evidence and present a defense; and, to have his guilt determined by the unanimous suffrage of the jury?

**Table of Contents** - continued

Page

    4. Did the district court violate Mr. Kittson's constitutionally protected rights to Due Process and a fair and impartial adjudicator at sentencing when the court resolved a factual dispute against Mr. Kittson based not on any evidence proffered by the government, but instead based on the court's prior personal practice sitting as a judge in the Oregon State courts?

Statutory and Constitutional Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Relevant Facts and Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A. The Events Underlying the Charges . . . . . . . . . . . . . . . . . . . . . . . 6

        B. Pretrial Litigation Under *Bruen* . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C. The Defense Presentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        D. The Trial Court Rulings Denying The Rule 29 Motion at the Close of the Government's Case; Precluding the Jury from Considering Mr. Kittson's Theories of Defense on Count 1; And, Directing a Verdict On a Contested Element of the Offense . . . . . . . . . . . . . . . . . . . . . . . 12

        E. The Jury Verdict That Acquitted Mr. Kittson of Possessing Any Weapon but Found him Guilty of Aiding and Abetting the Transfer of a Machinegun . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        F. The Contested Sentencing Issue, on Which the Government Offered no Evidence, That the Court Resolved Based on Court's Prior Personal Practice as a Judge in the State Courts . . 14

**Table of Contents** - continued

Page

Custody Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Summary Of The Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

I. The Trial Court Erred In Denying Mr. Kittson's Rule 29
Motion Or, In The Alternative, Failing to Provide The
Requested Jury Instruction On The Statutory Language
Of 18 U.S.C. § 922(o)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

A. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

B. The Plain Language of 18 U.S.C. § 922(o)(2)(A) and the
Rules of Statutory Construction Confirm That the
Statute Excludes Transfers to the Government . . . . . . . . . . . . . . 19

C. Mr. Kittson's Conduct Amounted at Most to an Attempt
to Aid and Abet an Illegal Transfer, and He Cannot Be
Found Guilty Under An Attempt Theory of Liability . . . . . . . . . 24

1. The statute, by its terms, does not criminalize attempt
confirming Congressional intent not to do so . . . . . . . . . . . . 24

2. Courts have rejected attempt liability for similarly
worded sections of 18 U.S.C. § 922 . . . . . . . . . . . . . . . . . . . . . 25

D. This Statutory Interpretation Is Consistent with the
Purpose of the Statute, to Remove Machineguns
from Commerce . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

E. No Controlling Authority Modifies the Plain Meaning of
Subsection (o)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**Table of Contents** - continued

**Page**

F. At the Least, the Jury Should Have Been Instructed on
These Statutory Elements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

G. A Judgment of Acquittal, or at the Least a Remand to
Allow the Jury to Consider this Defense, is Required  . . . . . . . . 35

II. The Ban On Machineguns Set Forth In 18 U.S.C. § 922(o)
Violates The Second Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . 35

A. Standard Of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

B. Under a *Bruen* Analysis, the Ban on Machineguns set
Forth in 18 U.S.C. § 922(o) Violates The Second
Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

III. The Jury Instruction Wholly Excluding A Magazine
As Necessary For The Weapon To Function As A Machinegun
Directed A Verdict On An Element Of The Offense, Deprived
Mr. Kittson of Critical Constitutional Rights, And Requires
Reversal For A New Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

A. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

B. Whether a Weapon Qualifies as a Machinegun is An
Element Of The Offense for Violating 18 U.S.C. § 922(o)
And the Existence of any Defect or the Lack of an
Irreplaceable Part Are Issues For The Jury To Consider  . . . . . . . 40

C. Mr. Kittson's Intended Defense Based On: The Unique
Nature of the Machinegun; the Need For Specific
Magazines to Allow it to Fire Automatically; The Fact
that it was Sold by Bohanan With a Magazine That Was
Not Operable; And, the Likelihood that Bohanan
Believed That the Machingun Would Not Operate as
an Automatic Weapon  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

**Table of Contents** - continued

**Page**

D. The District Court's Instruction That Removed This Defense From the Jury, Directing a Verdict on a Contested Element of the Offense . . . . . . . . . . . . . . . . . . . . . . . . 44

E. This was a Highly Contested Issue so this Instructional Error Cannot be Found Harmless and Reversal is Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

IV. The Sentencing Proceeding Violated Mr. Kittson's Constitutionally Protected Rights To Due Process And A Fair And Impartial Adjudicator When The Court Resolved A Disputed Fact Based, Not On Any Evidence Provided By The Government, But Instead Based On Prior Personal Practices As A Judge In The Oregon State Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

A. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

B. The District Court's Fact Findings Were Not Based On Evidence Produced by the Government, But Instead on the Court's Prior Personal Practice as a Judge in the Oregon State Courts, Requiring Reversal . . . . . . . . 48

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Certificate of Related Cases (none) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Brief Format Certification Pursuant to Rule 32(a)(7)(C) . . . . . . . . . . . . . . 53

## TABLE OF AUTHORITIES

**Case Law Authority**                                            **Page(s)**

*Almendarez-Torres v. United States*,
    523 U.S. 224 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ariz. Health Care Cost Containment Sys. v. McClelland*,
    508 F.3d 1243 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Azure v. Morton*,
    514 F.2d 897 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bartenwerfer v. Buckly*,
    598 U.S. 69 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bittner v. United States*,
    598 U.S. 85 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Bostock v. Clayton County*,
    590 U.S. 644 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Commissioner v. Acker*,
    361 U.S. 87 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Carpenters v. United States*,
    330 U.S. 395 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Dist. Of Columbia v. Heller*,
    554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37, 38

*Gall v. United States*,
    552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Guido v. Mount Lemmon Fire District*,
    859 F.3d 1168 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 32

*Koonwaiyou v. Blinken*,
    69 F.4th 1004 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Table of Authorities** – continued

**Case Law Authority**                                                        **Page(s)**

*Lamie v. United State Trustee,*
540 U.S. 526 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Leuthauser v. United States,*
71 F.4th 1189 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Marshall v. Jerrico, Inc.,*
446 U.S. 238 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Mathews v. United States,*
485 U.S. 58 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Miller v. Gammie,*
335 F.3d 889 (9th Cir. 2003) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Neder v. United States,*
527 U.S. 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
597 U.S. 1 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 17, 35, 36, 37, 38, 39

*Perri v. Department of the Treasury; Bureau of Alcohol,*
*Tobacco and Firearms,* 637 F.2d 1332 (9th Cir. 1981) . . . . . . . . . . . 32, 34

*Quercia v. United States,*
289 U.S. 466 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Range v. Att'y Gen.,*
69 F.4th 96 (3d Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 38

*Rita v. United States,*
551 U.S. 338 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*SEC v. McCarthy,*
322 F.3d 650 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Table of Authorities** – continued

**Case Law Authority**       **Page(s)**

*Sparf & Hansen v. United States,*
    156 U.S. 51 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Staples v. United States,*
    511 U.S. 600 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

*State v. Langford,*
    10 N.C. 381 (1824) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Trainmen v. Baltimore & Ohio R. Co.,*
    331 U.S. 519 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Alfaro,*
    336 F.3d 876 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*United States v. Ameline,*
    409 F.3d 1073 (9th Cir. 2005) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . 48

*United States v. Bascue,*
    97 F.3d 1461 (table), 1996 WL 554488
    (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32, 32, 33, 34

*United States v. Brooks,*
    611 F.2d 614 (5th Cir. 1980), *overruled in part on other*
    *grounds, United States v. Henry*, 749 F.2d 203 (5th Cir.
    1984) (*en banc*), *abrogation recognized in turn, United*
    *States v. Jones*, 839 F.2d 1041 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . 33

*United States v. Carty,*
    520 F.3d 984 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Castillo,*
    69 F.4th 648 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Table of Authorities** – continued

<u>**Case Law Authority**</u>                                              <u>**Page(s)**</u>

*United States v. Chi,*
  936 F.3d 888 (9th Cir.), *amended sub nom.*
  *United States v. Heon-Cheol Chi*, 942 F.3d 1159
  (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Crandall,*
  525 F.3d 907 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Collazo,*
  984 F.3d 1308 (9th Cir. 2021) (*as amended*) . . . . . . . . . . . . . . . . . . . . 40

 *United States v. Davis,*
  588 U.S. 445 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 33

*United States v. Duarte,*
  __ F.4th __, 2024 WL 2068016
  (9th Cir., May 9, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Duroseau,*
  26 F.4th 674 (4th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Felix,*
  561 F.3d 1036 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49

*United States v. Fries,*
  725 F.3d 1286 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Gagarin,*
  950 F.3d 596 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Unied States v. Garcia,*
  768 F.3d 822 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Garcia-Cruz,*
  978 F.2d 537 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Table of Authorities** – continued

**<u>Case Law Authority</u>**                                          **<u>Page(s)</u>**

*United States v. Guess*,
  629 F.2d 573 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Hansen*,
  97 F.4th 677 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 46

*United States v. Henderson*,
  998 F.3d 1071 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Henry*,
  688 F.3d 637 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 33, 36, 37

*United States v. Hopkins*,
  703 F.2d 1102 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Howard*,
  894 F.2d 1085 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*United States v. Hunter*,
  843 F. Supp. 235 (E.D. Mich. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Joe*,
  452 F.2d 653 (10th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Kenney*,
  91 F.3d 884 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Kleinman*,
  880 F.3d 1020 (9th Cir. 2017)
  *(as amended* January 22, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Kuzma*,
  967 F.3d 959 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

**Table of Authorities** – continued

<u>**Case Law Authority**</u>                                                          <u>**Page(s)**</u>

*United States v. Liew,*
   856 F.3d 585 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Lopez,*
   998 F.3d 431 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Mason,*
   902 F.2d 1434 (9th Cir. 1990), *overruled in part on other*
   *grounds, Dixon v. United States*, 548 U.S. 1 (2006) . . . . . . . . . . . . . . . 34

*United States v. Martin Linen Supply Co.,*
   430 U.S. 564 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 46

*United States v. McCauley,*
   601 F.2d 336 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Meek,*
   366 F.3d 705 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Miller,*
   953 F.3d 1095 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Montoya-Gaxiola*,
   796 F.3d 1118 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Nevils,*
   598 F.3d 1158 (9th Cir. 2010) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. O'Brien,*
   560 U.S. 218 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Pacheco,*
   977 F.3d 764 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## Table of Authorities – continued

**Case Law Authority**                                                    **Page(s)**

*United States v. Paulson,*
    68 F.4th 528 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Perez-Garcia,*
    96 F.4th 1166 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Theunick,*
    651 F.3d 578 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Wright,*
    625 F.3d 583 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35


**Statutory or Rule Authority**                                           **Page(s)**

UNITED STATES CONSTITUTION

    Second Amendment . . . . . . . . . . . . . . . . . 2, 4, 9, 17, 35, 36, 37, 38, 39, 50
    Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 45

UNITED STATES CODE

    Title 18
        § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
        § 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 25
          (a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
          (5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 27
         (g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6
          (1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          (9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         (o) . . . . . . . . . 2, 4, 9, 15, 17, 24, 29, 34, 35, 36, 39, 40, 50
          (1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20
          (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            (A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
            (B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20, 22, 29

**Table of Authorities** – continued

## **Statutory or Rule Authority**          **Page(s)**

UNITED STATES CODE

   Title 18

        § 3231 ................................................. 1
        § 3742 ................................................. 1

   Title 26

        § 5845(b) ......................................... 4, 40

   Title 28

        § 1291 ................................................. 1
        § 1294 ................................................. 1

UNITED STATES SENTENCING GUIDELINES

   § 4A1.2(f) ......................................... 5, 15, 48
   § 4C1.1 ............................................... 14

FEDERAL RULES OF APPELLATE PROCEDURE

   Rule 4(b) ............................................... 1

FEDERAL RULES OF CRIMINAL PROCEDURE

   Rule 29 ............................................. 12, 18
   Rule 32(i)(3)(B) ..................................... 48

LOCAL RULES FOR THE NINTH CIRCUIT COURT OF APPEALS

   Rule 36-3(a) ......................................... 31

OREGON REVISED STATUTES

   § 813.200(4) ......................................... 15
   § 813.230(1)(a) ..................................... 15

**Table of Authorities** – continued

## <u>Other Legal Authorities</u>                                   <u>Page(s)</u>

4 Blackstone 148-49 (1769)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*National Firearms Act: Hearing on H.R. 9066 Before the H.
Comm. on Ways and Means,* 73rd Cong. 19 (1934) . . . . . . . . . . . . . . . 38

Scalia, Antonin & Bryan A. Garner, *Reading Law:
The Interpretation of Legal Texts* (2012)  . . . . . . . . . . . . . . . . . . . . . . . . 32

The Firearm Owners' Protection Act of 1986,
Pub. L. No. 99-308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

## STATEMENT OF JURISDICTION AND TIMELINESS

Defendant Daniel Matthew Kittson was charged with possessing and transferring a machinegun in violation of 18 U.S.C. § 922(o) and being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g). 5-ER-940-42. Mr. Kittson was acquitted of the later charge but convicted of the former under the theory that he aided and abetted another in the transfer of the machine gun pursuant to 18 U.S.C. § 2. The district court entered a final judgment on December 4, 2023. 1-ER-2-9. Mr. Kittson filed a timely notice of appeal on December 12, 2023, pursuant to Federal Rule of Appellate Procedure 4(b). 5-ER-943.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294 and 18 U.S.C. § 3742.

## STATEMENT OF ISSUES

Mr. Kittson's defense to the charges is that he never personally possessed the machinegun, but was duped into assisting the transfer of that weapon by a principal who knew the weapon was not capable of firing automatically as sold and likely believed could not be made capable of firing automatically; and, that the transfer was not criminal under the statute adopted by Congress.

The issues on appeal are:

1. Given that the statute criminalizing possession and transfer of machineguns, 18 U.S.C. § 922(o), does not criminalize an attempted transfer and exempts transfers to the government from criminal culpability in subsection (o)(2)(A):

   a) does a transfer to an undercover government agent violate the statute?

   b) should the jury have been instructed on the terms of the statute?

2. Whether a near total ban on the possession of machineguns is consistent with the Nation's historical tradition of firearms regulation under the Second Amendment, based on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

3. Whether the jury instruction that a functioning magazine was irrelevant to the question of whether a weapon qualified as a machinegun – given over Mr. Kittson's objection – requires reversal because: it was an erroneous statement of the law; directed a verdict on a contested element of the offense; deprived Mr. Kittson of critical constitutional rights including his right to be presumed innocent; to require the government to prove his guilt of all elements of the offense beyond a reasonable doubt; to confront the evidence and present a defense; and, to have his guilt determined by the unanimous suffrage of the jury?

4.  Did the district court violate Mr. Kittson's constitutionally protected rights to due process and a fair and impartial adjudicator at sentencing when the court resolved a factual dispute against Mr. Kittson based not on any evidence proffered by the government, but instead based on the court's prior personal practice sitting as a judge in the Oregon State courts?

## STATUTORY AND CONSTITUTIONAL PROVISIONS

The Second Amendment guarantees the right to keep and bear Arms:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

The Sixth Amendment guarantees the following rights:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

Title 18, section 922(o), makes it a crime to possess or transfer a "machinegun" with specific exceptions, and provides:

> (o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
>
> (2) This subsection does not apply with respect to –
>
> > (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
> >
> > (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

The term "machinegun" is defined by 26 U.S.C. § 5845(b) as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

Criminal liability for aiding and abetting is set forth in 18 U.S.C. § 2 as follows:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

United States Sentencing Guidelines § 4A.2(f) establishes when a diversionary disposition may be scored for criminal history:

> Diversion from the judicial process without a finding of guilt (*e.g.*, deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.

And Application Note 9 to that Guideline provides:

> **9. Diversionary Dispositions**. Section 4A1.2(f) requires counting prior adult diversionary dispositions if they involved a judicial determination of guilt or an admission of guilt in open court. This reflects a policy that defendants who receive the

-5-

benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency.

## STATEMENT OF THE CASE

### Nature of the Case

This is a direct appeal in a criminal case following a jury verdict that was entered on August 24, 2024, acquitting Mr. Kittson of the charge of personally possessing a firearm as a prohibited person, in violation of 18 U.S.C. § 922(g), but convicting him under an aiding and abetting theory of transferring a machinegun in violation of 18 U.S.C. § 922(o) and 18 U.S.C. § 2. 2-ER-79.

### Relevant Facts and Procedural History

### A.    The Events Underlying the Charges.

In January of 2020, Bureau of Alcohol Tobacco and Firearms (ATF) Agent Jason Weber was informed by one of his Confidential Informants, a woman named Nikki, that a machinegun was available for purchase. 3-ER-375-76. Nikki gave Agent Weber the phone number for Daniel Kittson, and Agent Weber negotiated with Mr. Kittson for the purchase of that weapon through several phone calls and text message exchanges. 3-ER-375-76, 3-ER-326. Mr. Kittson informed Agent Weber that the weapon was a World War II era Russian-manufactured PPSh-41, and was a fully automatic firearm in good working order. 4-ER-727. Mr. Kittson acknowledged that the PPSh-41 did not

have a "stamp," meaning that it had not been properly registered before the passage of the Firearm Owners' Protection Act of 1986, and the parties negotiated the price of the weapon based on that fact. 4-ER-727-28.

On January 10, 2020, Agent Weber called Mr. Kittson to finalize the purchase. Mr. Kittson informed Agent Weber that the PPSh-41 was not in his possession but was in the Salem area, and tried to schedule a different day for the purchase. 3-ER-342-43. Agent Weber stated he wanted to proceed with the purchase that day, and Mr. Kittson informed him the that transaction would have to occur soon as the firearm was leaving the area shortly. 3-ER-343.

Agent Weber arrived at Mr. Kittson's house to pick him up; Mr. Kittson gave Agent Weber directions to another location; a small residence that was then under construction and which was owned by a Ms. Tina Schneider, a location all parties have referred to as "the tiny house." 3-ER-282, 3-ER-297-98, 3-ER-443-44. Ms. Schneider had hired a man named Ray Bohanan to help with the renovations, and only she and Ray Bohanan had access to the tiny house. 3-ER-452. Mr. Kittson himself did not have access, and Ms. Schneider knew Mr. Kittson only tangentially. 3-ER-472. Ms. Schneider knew Ray Bohanan through his former wife, and she briefly dated him. 3-ER-452. Ms. Schneider was unaware that Bohanan was selling firearms from the tiny house. 3-ER-468.

-7-

Once Mr. Kittson and Agent Weber arrived at the tiny house, they met Bohanan. Bohanan had the PPSh-41, as well as pistol on his person, an AR-15 that was potentially fully automatic and a second PPSh-41, all of which were visible to Agent Weber in the tiny house. 3-ER-302. Bohanan claimed to Agent Weber that he had fired the PPSh-41, while Mr. Kittson stated that he had never fired it. 3-ER-348-49.

Agent Weber asked to whom the money should go, and Mr. Kittson stated that the money was to go to Bohanan. 3-ER-347-48. Agent Weber suggested that Bohanan count the money, and Bohanan gave part of the money to Mr. Kittson to count. 3-ER-309, 3-ER-348. Agent Weber inquired about the price for the other PPSh-41, and Bohanan stated that it would be "more" while instructing Weber that if he wanted to engage in any further transactions, he should continue to go through Mr. Kittson. 3-ER-351-52.

Ray Bohanan was known to be a gun afficionado and a "survivalist" who, during this time, was planning on retreating to a bunker that he had built in rural Oregon. 3-ER-453-54, 2-ER-126. At the time of this transaction, Bohanan had been convicted of a misdemeanor for domestic violence and was charged with possession and use of narcotics, 3-ER-328-29, 3-ER-335, so that he himself was prohibited from owning or possessing any firearms under 18

U.S.C. § 922(g)(3) & (g)(9). However, Bohanan was never arrested as part of the investigation in this case, and died in June of 2020.

On March 9, 2021, Mr. Kittson was charged in a two-count Indictment. Count 1 charged the crime of possessing or transferring a machinegun in violation of 18 U.S.C. § 922(o), and included a charge under 18 U.S.C. § 2, for aiding and abetting such a crime; Count 2 charged the possession of a firearm after having been convicted of a crime punishable by more than a year in prison in violation of 18 U.S.C. § 922(g)(1). 5-ER-440-41. Both counts referred to the same firearm, the PPSh-41.

## B.    Pretrial Litigation Under *Bruen*.

Prior to trial, Mr. Kittson filed a motion under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), arguing that 18 U.S.C. § 922(o) violates the Second Amendment because the Nation's historic tradition of firearms regulation does not support a near total ban on machineguns. 5-ER-950 (docket entry 43). The motion was denied as the district court found Ninth Circuit precedent on the question, the decision in *United States v. Henry*, 688 F.3d 637 (9th Cir. 2012), was still binding following *Bruen*.

## C.    The Defense Presentation.

Mr. Kittson stipulated that at the time of the exchange he had been convicted of a crime punishable by more than a year in prison, 2-ER-69, but maintained his innocence of the crimes charged.

Mr. Kittson contended that he never possessed, either actually or constructively, the machinegun. Instead, the machinegun was possessed and owned by Ray Bohanan alone. The lack of possession constituted a defense to Count 2 and a defense to the possession element of Count 1. However, under Count 1, Mr. Kittson could still be found to have aided and abetted Bohanan's transfer of a machinegun. Mr. Kittson had two defenses to that charge.

Legally, Mr. Kittson noted that the transfer to Agent Weber did not violate the law. Weber was a government agent acting within the course and scope of his duties, and a transfer to him is lawful under 18 U.S.C. § 922(o)(2)(A). To the extent that the government based its theory of liability on Mr. Kittson's lack of knowledge of Agent Weber's status, that constituted the crime of attempting to transfer the weapon unlawfully, and the statute – like other similarly worded statutes – does not criminalize any form of attempt. 3-ER-437-38 (docket entry 112).

Factually, Mr. Kittson contended that he could not be guilty of transferring a machinegun because the PPSh-41 was not functioning as a machinegun. The

undisputed evidence was that the machinegun as sold by Bohanan would not fire because the magazine that it was sold with was not capable of functioning and was not capable of being repaired to function. 2-ER-164-65, 2-ER-172. Mr. Kittson contended that Bohanan likely knew that fact; and that Bohanan and Agent Weber's confidential informant Nikki – who knew each other and may have been involved, 3-ER-452-466, 2-ER-127-28, had arranged to sell the nonworking machinegun at the exorbitant price of $8,000 using Mr. Kittson to shield Bohanan, so that the purchaser would not know where Bohanan lived or how to contact him once the purchaser discerned that the PPSh-41 did not, in fact, fire automatically.

Mr. Kittson presented the testimony of John Robert Nixon, a trained Mechanical Engineer who is board certified by the International Board of Forensic Engineering Sciences, a member of the National Society of Professional Engineers, a fellow with the American Academy of Forensic Sciences, and an NRA-certified Firearms instructor and range safety instructor, 2-ER-154-58, as an expert on firearms and their functioning. 2-ER-159. Mr. Nixon testified that "the magazine is a critical component" of semiautomatic and automatic firearms. 2-ER-163. Regarding the PPSh-41 machinegun, Mr. Nixon explained that this weapon had historical problems with reliability, based largely on problems with the weapon's drum magazine.

2-ER-167. As Mr. Nixon detailed, these weapons had been semi-mass-produced during World War II, and each gun was produced with matching drums, usually between one and three drums, which were stamped with the same serial number as the gun itself; matching the serial number of the gun and the magazine was necessary to ensure the weapon worked reliably because these weapons had to be fitted with a particular magazine. 2-ER-168. Without a working magazine, the gun would not reliably fire more than a single round. 2-ER-169.

## D. The Trial Court Rulings Denying The Rule 29 Motion at the Close of the Government's Case; Precluding the Jury from Considering Mr. Kittson's Theories of Defense on Count 1; And, Directing a Verdict On a Contested Element of the Offense.

At the close of the government's case, Mr. Kittson moved for a directed verdict under Federal Rule of Criminal Procedure 29 on Count 1 because the transfer to a government agent did not violate the statute as specifically stated in subsection § 922(o)(2)(A). 3-ER-435-36 (docket entry 112). In the alternative, Mr. Kittson requested that the jury be instructed with the terms of the statute as the elements of the offense, so they could consider that defense. 2-ER-103. Both requests were denied, with the district court contending that the statute implied that any such defense required knowledge of the government agent's status. 1-ER-40-44, 2-ER-103.

-12-

On the factual defense that the weapon did not, and Bohanan likely believed could not, function as a machinegun, the district court removed the issue from the jury's consideration by instructing the jury that a magazine was unnecessary for the PPSh-41 to qualify as a machinegun. The instruction given stated:

> A weapon need not be equipped with a functioning magazine to qualify as a machinegun as long as the Government proves that the weapon shoots, is designed to shoot, or can be readily restored to shoot automatically, as defined in this instruction.

1-ER-67. Mr. Kittson objected to this instruction because: the instruction was not supported by the statutory definition of the term "machinegun" and no decisional authority supported this instruction; the instruction directed a verdict on whether the weapon was a machinegun, relieving the government of its obligation to prove this contested element of the charge; and, deprived Mr. Kittson of his constitutional rights, including his rights to be presumed innocent of the offense, to confront the evidence against him and present a defense, and to have his guilt determined by a jury based on proof beyond a reasonable doubt of all elements of the offense. 2-ER-101, 5-ER-805-06.

## E. The Jury Verdicts Acquitting Mr. Kittson of Possessing Any Weapon but Finding him Guilty of Aiding and Abetting the Transfer of a Machinegun.

The jury returned a verdict acquitting Mr. Kittson of Count 2, finding the evidence insufficient to prove beyond a reasonable doubt that he possessed the PPSh-41. The jury found Mr. Kittson guilty of Count 1, however. 2-ER-79. Because the jury has acquitted Mr. Kittson of Count 2, that verdict was necessarily based on the theory that Mr. Kittson aided and abetted Bohanan's transfer of the machinegun.

## F. The Contested Sentencing Issue, on Which the Government Offered no Evidence, That the Court Resolved Based on the Court's Prior Personal Practice as a Judge in the State Courts.

While Mr. Kittson had been convicted of a felony that prohibited his possession of any firearms under existing law, Mr. Kittson's criminal history was quite old. At sentencing Mr. Kittson contended there was no scoreable criminal history and was entitled to a two-level reduction in his offense level as a zero-point offender under U.S.S.G. § 4C1.1. If Mr. Kittson had been granted that status, his final offense level would have been 16, and with a criminal history category of I, his advisory guideline range would have been 21-27 months.[1]

---

[1] Before the district court Mr. Kittson also sought a two level adjustment for acceptance of responsibility. 1-ER-15-17. That issue is not presented on
(continued...)

The Pre-Sentence Report (PSR) assigned Mr. Kittson a single criminal history point for a 2009 charge of driving under the influence, brought in the Marion County Circuit Court, for which Mr. Kittson received and completed a diversionary sentence. PSR-18. Mr. Kittson objected to that calculation. 1-ER-21. For a diversionary sentence to be scored for criminal history, the Guidelines require that the sentence be based on "an admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding[.]" U.S.S.G. 4A1.2(f). The application note for this section confirms that the term "judicial proceeding" means an admission made in "open court." Application Note 9 to U.S.S.G. § 4A1.2 (referring to an "admission of guilt in open court.").

Oregon law governed Mr. Kittson's diversionary plea, specifically Or. Rev. St. § 813.230(1)(a). That statute instructs that a court "shall" accept the plea that is "filed as part of the petition for a diversion agreement . . ." The petition is a written document, the contents of which are defined in Or. Rev. Stat. § 813.200(4). Nothing in the Oregon statutes require that a diversionary plea agreement be entered in open court; the statutory term is "filed" not "entered" and there is no reference to a "judicial proceeding."

---

[1] (...continued)
appeal.

When the government failed to come forward with any evidence documenting a court proceeding, the district court determined that it would award a criminal history point for this conviction based on the court's own personal experience that, when the judge had sat on the Multnomah County Circuit Court (a different circuit then that addressing Mr. Kittson's DUI), she had required diversionary plea agreements to be entered in a judicial proceeding before her. 1-ER-21-24.

## Custody Status

Mr. Kittson continues to serve his term of imprisonment; the Bureau of Prisons has yet to establish a projected release date. Counsel for Mr. Kittson calculate that he should be released no later than September 12, 2024.

## SUMMARY OF THE ARGUMENT

Subsection (2)(A) of 18 U.S.C. § 922(o) excludes any "transfer to . . . the United States or any department or Agency thereof" from criminal liability. Unlike neighboring provisions of the statute, subsection (2)(A) does not limit its protection to only authorized or lawful transfers. It is undisputed that the PPSh-41 was transferred to Agent Weber who was acting on behalf of the ATF, a "department or agency" of the United States. At most, Mr. Kittson attempted to aid the transfer the PPSh-41 to a person he believed to be private actor, but § 922(o) does not criminalize attempts. The evidence – even when viewed in

the light most favorable to the government – does not support Mr. Kittson's conviction and the case should be remanded for entry of a judgment of acquittal. At a minimum, the district court erred in failing to instruct the jury regarding Mr. Kittson's defense under § 922(o)(2)(A), and the Court should remand the case for a new trial with the defendant's requested instruction.

The Supreme Court's decision in *Bruen*, *supra*, completely revised the standard for determining whether a law infringing on the right to keep and bear arms violates the Second Amendment to the Constitution of the United States. Under the analysis required by *Bruen*, the near total ban on the possession of machineguns set forth in 18 U.S.C. § 922(o) violates the Second Amendment because the government has identified no historical tradition of banning any particular category of arms at the time of ratification.

Over Mr. Kittson's objection, the district court instructed the jury that the existence of a functioning magazine was irrelevant to the determination of whether the weapon qualified as a machinegun. Whether the weapon was a machinegun was a contested element of the charge, and a question for the jury to decide. This instruction is without any support in the statutory language or the applicable case law, is contrary to the holdings that do exist, and has never previously been given. The instruction operated to: direct a verdict on a contested element of the offense; relieve the government of its obligation to

prove that element beyond a reasonable doubt; deprive Mr. Kittson of his constitutional rights including the right to be presumed innocent, to confront the evidence and present a defense, and to be convicted based only on the unanimous suffrage of the jury. This Court should remand for a new trial where this instruction will not be provided.

The district court's resolution of the contested sentencing issue based on the court's own personal practice when sitting as a judge in the Oregon state courts rendered the sentencing proceeding constitutionally infirm and in violation of Due Process, and also calls into question the neutrality and impartiality of the district court in this matter. Reversal is required.

## ARGUMENT

### I. The Trial Court Erred In Denying Mr. Kittson's Rule 29 Motion Or, In The Alternative, Failing to Provide The Requested Jury Instruction On The Statutory Language Of 18 U.S.C. § 922(o)(2)(A).

#### A. Standard of Review.

A motion for judgment of acquittal under F.R.Cr.P. 29 is reviewed *de novo*. *United States v. Gagarin*, 950 F.3d 596, 602 (9th Cir. 2020). The Rule 29 motion in this case presents an issue of statutory interpretation and statutory interpretation is a question of law that is also reviewed *de novo*. *United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020). When determining whether there was sufficient evidence for the jury's verdict, the Court considers

whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Gagarin*, 950 F.3d at 602 (quoting *United States v. Nevils,* 598 F.3d 1158, 1163-64 (9th Cir. 2010) (*en banc*) (internal citation omitted)).

Mr. Kittson also requested a jury instruction on subsection (2)(A), which was denied. Whether a jury instruction is support by law such that a defendant has a right to present it is reviewed *de novo. United States v. Crandall*, 525 F.3d 907, 911 (9th Cir. 2008) (*citing United States v. Garcia-Cruz*, 978 F.2d 537, 547 (9th Cir. 1992).

### B. The Plain Language of 18 U.S.C. § 922(o)(2)(A) and the Rules of Statutory Construction Confirm That the Statute Excludes Transfers to the Government.

Statutory interpretation starts with the text of the statute. *Bartenwerfer v. Buckly*, 598 U.S. 69, 74 (2023). "Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton County*, 590 U.S. 644, 653 (2020). The plain meaning of the text controls and courts should only "rarely depart from a statute's clear meaning because it risks creating a perception that they are inserting their own policy preferences into a law." *Guido v. Mount Lemmon Fire District*, 859 F.3d 1168, 1174 (9th Cir. 2017) (citations omitted). Neither "common sense" nor contentions regarding

legislative intent are sufficient on their own to depart from the statutory language where the meaning is plain. *Id*. at 1173.

Title 18 section 922(o)(1) makes it a crime to possess or transfer a machinegun unless that possession or transfer falls within the exceptions set forth in subsection (o)(2). Subsection (o)(2)(B) allows the possession and lawful transfer of any machinegun that was lawfully possessed prior to enactment of the statute.[2] Subsection (o)(2)(A) excepts "transfer to or by, or possession by or under the authority of, the United States[.]" The use of a comma to separate the transfer and possession provisions confirm that these provisions are disjunctive, so that "under the authority of" modifies the only the clause in which it exists, not both clauses. *See Leuthauser v. United States*, 71 F.4th 1189, 1196 (9th Cir. 2023) ("As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately.") (quoting *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975)). Thus, the statute excepts any "transfer to or by . . . the United States" and any "possession by or under the authority of the United States."

---

[2] Such machineguns have a "stamp" and are more valuable. The PPSh-41 was manufactured before the adoption of 18 U.S.C. § 922(o)(2)(A), so it could have been stamped and thus lawfully possessed, a fact discussed between Mr. Kittson and Agent Weber. 4-ER-727.

By writing this subsection of the statute in the disjunctive, Congress specifically chose not to narrow the "transfer to" exception in the same way that it narrowed the "possession" exception. "[A] court must presume that Congress intended a different meaning when it uses different words in connection with the same subject . . ." *Ariz. Health Care Cost Containment Sys. v. McClelland*, 508 F.3d 1243, 1250 (9th Cir. 2007) (citing *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003)). The cannon of surplusage requires a court, "if possible, to give effect to each word and clause in a statute." *Koonwaiyou v. Blinken*, 69 F.4th 1004, 1007 (9th Cir. 2023) (quoting *United States v. Lopez*, 998 F.3d 431, 440 (9th Cir. 2021)). In order to give effect to the different phrasing Congress used, the statute must mean that any "transfer to" the government regardless of whether it is "authorized" is exempt from liability, whereas possession by a government actor requires that they have governmental authority. Reading the statute this way accounts both for the different words used in the "transfer" clause and gives meaning to the additional words in the "possession" clause. This reading is also supported by the rule of the last antecedent; the limiting clause "under the authority of" only modifies the immediately preceding "possession" rather than the more remote antecedent "transfer." *See United States v. Paulson*, 68 F.4th 528, 537 (9th Cir. 2023) (applying the rule of the last antecedent).

-21-

Contrasting the terminology of subsections (2)(A) and (2)(B) confirms this statutory intent. In subsection (2)(B) Congress used the term "lawful" three times; exempting the "*lawful* transfer or *lawful* possession of a machinegun that was *lawfully* possessed" prior to enactment of the machinegun ban. The term "lawful" does not appear in subsection (2)(A) which exempts *any* transfer to the government regardless of whether the weapon was lawfully possessed or lawfully transferred. "When Congress includes particular language in one section of the statute, but omits it from a neighbor, we normally understand that difference in language to convey a different meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023).

The statute also does not require any particular state of mind for the transferor in subsection (2)(A), and nothing in the statutory language requires that the transferor either know or intend that the transfer be to a government agent. *See Lamie v. United State Trustee*, 540 U.S. 526, 538 (2004) (refusing to add words to a statute despite "a harsh outcome" due to deference to congressional authority); *United States v. Davis*, 588 U.S. 445, 464 (2019) ("Respect for due process and the separation of powers suggests a court may not, in order to save Congress the trouble of having to write a new law, construe a criminal statute to penalize conduct it does not clearly proscribe.").

The title of the statute also supports this reading. *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("We also note that 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528–529 (1947), (further citations omitted)).The title of the statute as adopted was The Firearm Owners' Protection Act of 1986. Pub. L. No. 99-308. That title establishes a desire to protect owners of firearms, not to punish transfers of firearms to government agents.

The rule of lenity also supports Mr. Kittson's reading of the statute. The Supreme Court has long held, and recently reaffirmed, that "statutes imposing penalties are to be 'construed strictly' against the government and in favor of individuals." *Bittner, supra*, 598 U.S. at 101 (*quoting Commissioner v. Acker*, 361 U.S. 87, 91 (1959)). The statutory text applies criminal penalties but confirms that in the circumstance of a transfer to a government agency, no criminal penalty may be imposed. As such, this statute falls squarely within the application of the rule of lenity and requires that the language be strictly construed against the government and against criminal culpability in such a circumstance.

### C. Mr. Kittson's Conduct Amounted at Most to an Attempt to Aid and Abet an Illegal Transfer, and He Cannot Be Found Guilty Under An Attempt Theory of Liability.

Agent Weber worked for the ATF at the time he purchased the machinegun; Agent Weber took custody of that weapon in the course and scope of his duties as a government law enforcement agent; and, Agent Weber immediately transferred the machinegun to the government. 3-ER-358. The Confidential Informant, Nikki, was aware of Agent Weber's status. 3-ER-376. Because Ray Bohanan died before the government pursued any case, it is unknown if Nikki conveyed Agent Weber's status to Bohanan. Thus, the most the government could establish was that Mr. Kittson aided and abetted the sale of a machinegun to a government agent, without knowing that the individual was a government agent. However, Mr. Kittson cannot be found guilty of violated 18 U.S.C. § 922(o) based on any theory of attempt.

#### 1. The statute, by its terms, does not criminalize attempt, confirming Congressional intent not to do so.

There is no general federal attempt statute and a defendant "can only be found guilty of an attempt to commit a federal offense if the statute defining the offense expressly proscribes an attempt." *United States v. Hopkins*, 703 F.2d 1102, 1104 (9th Cir. 1983) (citing *United States v. Joe*, 452 F.2d 653, 654 (10th Cir. 1971)). The statute at issue here does not use the word "attempt" or any other word signifying an inchoate offense. *See United States v. Castillo*,

-24-

69 F.4th 648, 658 (9th Cir. 2023) ("The canon of construction, *expressio unius est exclusio alterius*, directs us to infer from Congress's express inclusion of enumerated offenses that its exclusion of inchoate crimes was intentional.") (citations omitted). Therefore, it only includes completed offenses.

### 2. Courts have rejected attempt liability for similarly worded sections of 18 U.S.C. § 922.

Title 18 section 922 criminalizes a number of actions involving firearms in its various subsections. When a subsection does not criminalize attempt, the courts have refused to convict a person under that theory.

Subsection (a)(5) of 18 U.S.C. § 922 makes it a crime for anyone "other than" a licensed individual to "transfer" a firearm to another person "other than" a licensed individual.[3] This language is very similar to prohibitory

---

[3] The subsection makes it a crime:

(5) for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) who the transferor knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the transferor resides; except that this paragraph shall not apply to (A) the transfer, transportation, or delivery of a firearm made to carry out a bequest of a firearm to, or an acquisition by intestate succession of a firearm by, a person who is permitted to acquire or possess a firearm under the laws of the State of his residence, and (B) the
(continued...)

language in subsection 922(o), and neither subsections include liability for any attempt to engage in the prohibited conduct. Both the Eleventh and Fourth Circuits have refused to extend liability to attempted unlicensed transfers under subsection (a)(5) where there was no evidence that such a transfer was completed.

In *United States v. Fries*, 725 F.3d 1286 (11th Cir. 2013), the defendant was convicted of transferring a firearm to an out of state resident when neither party was properly licensed, a violation of § 922(a)(5). *Id.* at 1288. At trial, the government proved only that the defendant did not have a license; it never proved that the other party was unlicensed. *Id.* at 1293. On appeal, the government contended that the conviction should be upheld because the defendant subjectively believed that the other party was not licensed. *Id.* The Eleventh Circuit disagreed holding that, under the statute, the government must prove that both parties were unlicensed, and that the defendant's "*subjective* belief that he was executing a transaction with an unlicensed person simply does not bear upon the *objective* state of affairs as they were at the time of sale." *Id.* (emphasis in original). Even though the defendant had not raised any similar argument at trial, the court reversed the conviction. *Id.*

---

[3] (...continued)
loan or rental of a firearm to any person for temporary use for lawful sporting purposes;

-26-

at 1290. The Eleventh Circuit pointed out that failure to prove an element of the statute could not be excused as a technicality: "It is no answer to say that the particular element at issue here — the licensure status of the transferee for purposes of § 922(a)(5) — is unimportant or somehow a technicality: our charge as arbiters of the law does not turn upon the potential for intrigue presented by the particular plot or cast of characters of a given case." *Id.* at 1294.

The Fourth Circuit reached a similar conclusion regarding § 922(a)(5) in *United States v. Duroseau*, 26 F.4th 674 (4th Cir. 2022). There the defendant planned to send firearms and ammunition to Haiti. *Id.* at 677. He flew to Haiti with the firearms and was intercepted at the airport by the Haitian National Police. *Id.* But the statute "criminalizes only completed transfers of firearms between unlicensed parties." *Id.* at 680. The theory of defense was that, because the firearms were intercepted by law enforcement, he was at most was guilty of having *attempted* "to transfer, sell, trade, give, transport, or deliver" a firearm – and such an attempt is not a crime. *Id.* at 677-78. The Fourth Circuit agreed that the statute "criminalizes only *completed* transfers of firearms between unlicensed parties," and reversed the conviction. *Id.* at 680, 682 (emphasis in original).

-27-

It is undisputed that Agent Weber was a person authorized to obtain the machinegun under § 922(o)(2)(A). Whether Mr. Kittson knew that fact, or whether he intended to aid and abet the transfer of a machinegun to a person who was not an agent of the United States, is irrelevant. No such transfer occurred, and Mr. Kittson cannot be found guilty of attempting to violate the statute.

### D. This Statutory Interpretation Is Consistent with the Purpose of the Statute, to Remove Machineguns from Commerce.

Congress' decisions to create a broad protection for transfers to the government, and not to criminalize any attempt, makes sense in light of the statute's purpose, as illustrated by a comparison to statutes where Congress elected to criminalize the attempted act.

For example, 18 U.S.C. § 2422(b) specifically bans attempts to induce underage prostitution. While eliminating underage prostitution may be one goal of the statute, Congress also believed that the conduct of inducing underage prostitution was inherently wrongful. Criminalizing even an unsuccessful attempt to do so supports the statutory goals of eliminating this inherently wrongful conduct and punishing any individual involved therein. In *United States v. Meek*, 366 F.3d 705, 717-18 (9th Cir. 2004), this Court, relying on the express inclusion of attempt liability in the statute, confirmed

-28-

that an individual would be liable when they sought to entice a minor into underage prostitution even when they were unsuccessful because there was no minor, and they were caught in a "sting" operation. The willingness to engage in such inherently wrongful conduct justified imposing criminal liability.

In contrast, Congress adopted 18 U.S.C. § 922(o), with the goal of regulating and limiting the number of machineguns available to the public. *See United States v. Kenney*, 91 F.3d 884, 890 (7th Cir. 1996) (referring to "§ 922(o)'s purpose of freezing the number of legally possessed machine guns at 1986 levels[.]") Congress did not contend that ownership of such weapons was inherently immoral or criminal, and under subsection (o)(2)(B), Congress allowed individuals who owned registered machineguns at the time of the statute's adoption to continue to own, and lawfully transfer, these weapons. *United States v. Hunter*, 843 F. Supp. 235, 249 (E.D. Mich. 1994) ("If Congress had intended to simply ban possession outright, it would not have 'grandfathered' the transfer and possession of machineguns lawfully possessed on the statute's effective date."). The failure of the statute to criminalize any attempt to buy a fake machinegun, such as in a sting operation, and the statutory exception for any transfer to the government, are consistent with Congressional intent; an intent that does not deem the ownership of machineguns as inherently immoral. Any transfer of a machinegun to the

-29-

government fully meets the goal of the statute simply by taking that weapon out of circulation.

Recognizing the statutory purpose also explains why subsection (o)(2)(A) adopts a narrower exclusion for the possession of a machinegun by a government agent than for the transfer of a machinegun to the government. Agents of the government that possess a machinegun under subsection (o)(2)(A) must do so "under the authority" of the government, and may not simply decide to possess the weapon on their own. *See, e.g., United States v. Theunick*, 651 F.3d 578, 585-87 (6th Cir. 2011) (upholding a conviction where certain prosecutors and police officers had purchased machineguns for private use). Yet there is no requirement that the transfer to the government be under any authority; such a transfer accomplishes the statutory goal of removing the machinegun from public circulation simply by its occurrence. No further authorization is needed.

### E. No Controlling Authority Modifies the Plain Meaning of Subsection (o)(2)(A).

The trial court rejected Mr. Kittson's reading of the statute, relying primarily on an unpublished opinion *United States v. Bascue*, 97 F.3d 1461 (table), 1996 WL 554488 (9th Cir. 1996).[4] Mr. Kittson recognizes that *Bascue*

---

[4] There was significant litigation in the district court regarding whether
(continued...)

is an unpublished opinion and, given the date of the ruling, is not to be cited under Ninth Circuit Rule 36-3(a). However, as it formed the basis for the district court's analysis, Mr. Kittson addresses why the extremely limited analysis therein cannot modify the plain meaning of 18 U.S.C. § 922(o)(2)(A).

In *Bascue* the defendants both possessed and transferred the machineguns, so the distinction between the possession and transfer clauses of subsection (2)(A) did not matter for the outcome. *See* 1996 WL 554488 at *3 (discussing the defendants manufacturing the machineguns in question). The *Bascue* analysis simply did not consider whether the transfer clause provides broader protection than the possession clause.

Then *Bascue* did not address the plain meaning of § 922(o)(2)(A), and cited no cannons of statutory construction. The Court simply concluded that the exemption in the statute was not "meant to" apply to sting operations. *Id*. at 2. But what Congress might have "meant" only matters if what Congress said

---

[4] (...continued)
this subsection is an element of the offense or an affirmative defense. Classifying (o)(2)(A) as an affirmative defense would do no more than shift the burden of production to Mr. Kittson. *See, e.g., United States v. Guess*, 629 F.2d 573, 576 n.4 (9th Cir. 1980) (discussing the general rule that the defendant bears the burden of production only, and once satisfied the government must disprove the defense beyond a reasonable doubt, but leaving open the possibility for a different standard in some cases). Mr. Kittson would have easily met that burden, as it is uncontested that Agent Weber was a government agent who was legally authorized to obtain the machinegun. 3-ER-358.

is not plain. *Guido*, *supra*, 859 F.3d at 1173 ("Further, any appeal to congressional intent is a non-sequitur; it is not a factor that should affect the determination of whether a statute's plain meaning is ambiguous.") (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 391 (2012)). There is no ambiguity in subsection (2)(A); Congressional intent is clear.

In rejecting any defense based on the unknowing transfer to a government agent, the *Bascue* opinion relied on the decision in *Perri v. Department of the Treasury; Bureau of Alcohol, Tobacco and Firearms*, 637 F.2d 1332 (9th Cir. 1981). *Perri* involved a license revocation under various provisions of 18 U.S.C. § 922, because the dealer sold guns to straw purchasers when it was clear to the dealer that the intended recipient was a convicted felon. In reality, the straw purchasers were undercover law enforcement agents and the intended recipient was acting as a confidential informant. *Id.* at 1334. The dealer contended that the statutory exemptions set out in subsection 18 U.S.C. § 925(a)(1) should apply, which stated:

> (a)(1) The provisions of this chapter, except for sections 922(d)(9) and 922(g)(9) and provisions relating to firearms subject to the prohibitions of section 922(p), shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

The Court held that this exemption could not apply to the unknowing transfer to a government agent, relying on the Fifth Circuit's analysis in *United States v. Brooks*, 611 F.2d 614 (5th Cir. 1980).[5] *Brooks*, in turn, rejected application of the exemption to the unknowing sale to a law enforcement agent because the "subsection does not exempt any sale or delivery of firearms; it expressly covers only the 'transportation, shipment, receipt, or importation[.]'" 611 F.2d at 617. As such, the statutory exemption of § 925(a)(1) protects only the specifically listed conduct, and "sales" were not within that list.

The statutory language of § 922(o)(2)(A) specifically exempts any transfer to the government, and there is no mismatch between the protected actions and Mr. Kittson's conduct, rendering the *Perri* analysis based on *Brooks* and subsequently relied on in the unpublished *Bascue* opinion, inapplicable. Further, the requirements for criminal liability, including due process, notice, and the rule of lenity, are far greater than in the license revocation context. *See, e.g., Davis*, *supra, 588* U.S. at 464 (discussing due process concerns with broadening criminal liability beyond the statutory language).

---

[5] The *Brooks* ruling was overturned regarding its entrapment analysis by the *en banc* ruling in *United States v. Henry*, 749 F.2d 203, 215 (5th Cir. 1984) (Gee, Circuit Judge, with whom, Reavley, Garwood, E. Grady Jolly, Patrick E. Higginbotham and Robert Madden Hill, Circuit Judges, join, *dissenting*) (recognizing overruling). However, the *Henry* analysis was recognized as having been abrogated by the ruling in *Mathews v. United States*, 485 U.S. 58 (1988) in *United States v. Jones*, 839 F.2d 1041, 1053 (5th Cir. 1988).

Neither *Perri* nor *Bascue* address the arguments raised by Mr. Kittson, and neither provide a basis to depart from the plain meaning of 18 U.S.C. § 922(o)(2)(A).

### F. At the Least, the Jury Should Have Been Instructed on These Statutory Elements.

Mr. Kittson specifically requested that the jury be instructed with the statutory language of 18 U.S.C. § 922(o), including the language of subsection (2)(A). 2-ER-103 & 5-ER-951 (ECF 74). The trial court refused to give that instruction.

"A defendant is entitled to have the judge instruct the jury on his theory of defense provided that it is supported by law and has some foundation in evidence." *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990), *overruled in part on other grounds by Dixon v. United States*, 548 U.S. 1 (2006). The instruction requested was the exact statutory language, and the evidence sufficiently established a basis for an argument that the statutory exemption of subsection (2)(A) applied. The trial court's refusal to give this instruction deprived Mr. Kittson of his right to confront the charges and evidence against him and present a defense.

-34-

### G. A Judgment of Acquittal, or at the Least a Remand to Allow the Jury to Consider this Defense, is Required.

Because the jury found Mr. Kittson not guilty of possessing the PPSh-41 in Count 2, and because it was uncontested that Agent Weber was working on behalf of the ATF when he received the weapon, Mr. Kittson's conviction on Count 1 should be reversed and the district court should be instructed to enter a judgment of acquittal on remand. In the alternative, the Court should at least remand for Mr. Kittson to receive a new trial with the jury appropriately instructed regarding the statutory language of subsection (o)(2)(A).

## II. The Ban On Machineguns Set Forth In 18 U.S.C. § 922(o) Violates The Second Amendment.

### A. Standard Of Review.

Whether the ban on machineguns adopted in 18 U.S.C. § 922(o) violates the Second Amendment is a constitutional challenge that is reviewed *de novo*. *Unied States v. Garcia*, 768 F.3d 822, 827 (9th Cir. 2014) *(citing United States v. Wright*, 625 F.3d 583, 590 (9th Cir. 2010)).

### B. Under a *Bruen* Analysis, the Ban on Machineguns set Forth in 18 U.S.C. § 922(o) Violates The Second Amendment.

The Supreme Court's landmark ruling in *Bruen* directs a new, two-step, analysis for whether a restriction on the constitutional right to bear arms violates the Second Amendment. 597 U.S. at 17. First, the court asks whether

-35-

the plain text of the Second Amendment covers the conduct. *Id*. If it does, at step two the court must engage in a historical analysis to determine whether the law fits within the nation's historic tradition of firearm regulation. *Id*.

This Court's decision in *United States v. Henry*, 688 F.3d 637 (9th Cir. 2012), upheld the constitutionality of 18 U.S.C. § 922(o). However, *Henry* was decided before *Bruen* and utilized an interest-balancing inquiry that *Bruen* overruled. *See United States v. Perez-Garcia*, 96 F.4th 1166, 1178 (9th Cir. 2024) (recognizing that *Bruen* had "rejected" the Ninth Circuit's interest balancing approach). Instead, *Henry* relied heavily on the words "dangerous and unusual" in *Dist. Of Columbia v. Heller*, 554 U.S. 570, 627 (2008), as its touchstone for constitutional analysis.[6] *Henry,* 688 F.3d at 639-40. Applying that test, *Henry* held that machineguns are dangerous because they are weapons "likely to cause serious bodily harm" (as are all firearms), *id*. at 640; and, then held that machineguns are unusual because they are illegal. *Id*.

*Henry* did not cite a single founding era source and did not address whether machineguns constitute "arms" within the plain meaning of the

---

[6] The Third Circuit cautioned that courts should be careful not to "overread" stray phrases such as "law-abiding, responsible citizens" that were used in *Heller* but were not necessary to the analysis. *Range v. Att'y Gen.*, 69 F.4th 96, 100 (3d Cir. 2023). It was precisely that tendency that had let so many circuits to adopt an interest balancing approach to the Second Amendment. *Id. Bruen* made clear that whether a statute is constitutional depends on a historical analysis, not a weighing of interests. *Id.*

Second Amendment. As such, the analysis in *Henry* is irreconcilable with the requirements set forth in *Bruen*, and is no longer good law. *United States v. Duarte*, ___ F.4th ___, 2024 WL 2068016 at *2 (9th Cir., May 9, 2024)(holding that prior Ninth Circuit firearms precedent was overruled because it did not apply the two step analysis in Bruen); *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (*en banc*) (explaining that precedential opinions can be overruled by a panel when closely related Supreme Court precedent undermines their reasoning).

The PPSh-41 in this case is clearly an "arm" under the Second Amendment. "The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those not in existence at the time of the founding." *Heller*, 554 U.S. at 582. Arms as protected under the Second Amendment are simply weapons that may be carried, including firearms. *Id.* at 581-588. There is little doubt the PPSh-41 in this case is a weapon that can be carried, so it is presumptively protected by the Second Amendment.

The issue then is whether banning the possession or transfer of automatic rifles is consistent with the Nation's historical tradition of firearms regulation. *Bruen*, 591 U.S. at 24. The government bears the burden of showing that it is. *Id.* ("The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearms regulation.").

-37-

Courts rely on the party-presentation principle with respect to historical analogues. *Id.* at 25 n.6. The statute in this case was passed in 1986, so it is itself a poor historical precedent. *See Range*, *supra*, 69 F.4th at 107 (pointing out that 1961 is far too recent to be "longstanding"). Notably, as late as 1934 the Attorney General conceded that a total ban on machineguns might violate the Second Amendment when discussing the National Firearms Act. *National Firearms Act: Hearing on H.R. 9066 Before the H. Comm. on Ways and Means*, 73rd Cong. 19 (1934).

Before the district court the government offered two historical analagous; neither satisfies *Bruen*. First, the government offered a passage from Blackstone that was quoted in *Heller*. The government provided just a snippet of the passage, but the full quote is:

> The offence of riding or going armed, with dangerous or unusual weapons, is a crime against the public peace, by terrifying the good people of the land; and is particularly prohibited by the statute of Northampton, 2 Edw. III. c. 3. upon pain of forfeiture of the arms, and imprisonment during the king's pleasure: in like manner as, by the laws of Solon, every Athenian was finable who walked about the city in armour.

4 Blackstone 148-49 (1769). This passage does not discuss bans on particular kinds of weapons, instead it bans particular *conduct* with weapons, in particular the offense "of riding or going armed." Further, the passage references the 1328 Statute of Northampton, which is thoroughly discussed in

-38-

*Bruen*. 597 U.S. at 40-45. *Bruen* noted that the statute was too old to be directly relevant and that it only banned certain conduct with weapons such as would likely "terrify the people." *Id*. at 41, 43-44. By the late Seventeenth Century, "going armed" regulations required a showing (absent from § 922(o)) of "evil intent or malice." *Id*. at 44.

Second, the government relied on an 1824 North Carolina decision, *State v. Langford*, 10 N.C. 381 (1824). In that case several men had "fired at the house of an unprotected female" and killed her dog. *Id*. at 383. The case turned primarily on technical grounds of pleading, but the court referenced in passing the common law concept of carrying weapons "in such manner as will naturally cause a terror of the people." *Id*. *Langford* supports the historical analysis in *Bruen* that the common law primarily banned conduct with firearms, akin to modern assault statutes, and did not include broad bans on particular kinds of weapons.

Neither of the government's historical analogues banned any kind of weapon. Even assuming that the government must only supply a statute that is "relevantly similar," statutes banning specific conduct with any weapons do not resemble statutes banning specific weapons regardless of the conduct. *See Bruen*, 597 U.S. at 28-30 (discussing different kinds of historical analysis depending on the similarity of the societal problem). Since no historical

analogue supports § 922(o)'s ban on transferring and possessing machineguns, this Court should hold it unconstitutional.

**III.  The Jury Instruction Wholly Excluding Whether A Magazine Was Necessary For The Weapon To Function As A Machine Gun Directed A Verdict On An Element Of The Offense, Deprived Mr. Kittson of Critical Constitutional Rights, And Requires Reversal For A New Trial.**

**A.  Standard of Review.**

Whether jury instructions omit or misstate elements of a statutory crime is reviewed *de novo*. *United States v. Collazo*, 984 F.3d 1308, 1318 (9th Cir. 2021) (*as amended*); *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). Whether the instructions allow consideration of a defendant's proffered defense or theory of the case is also reviewed *de novo*. *See United States v. Chi*, 936 F.3d 888, 893 (9th Cir.), *amended sub nom. United States v. Heon-Cheol Chi*, 942 F.3d 1159 (9th Cir. 2019); *United States v. Kleinman*, 880 F.3d 1020, 1039 (9th Cir. 2017) (*as amended January 22, 2018*); *United States v. Liew*, 856 F.3d 585, 596 (9th Cir. 2017).

**B.  Whether a Weapon Qualifies as a Machinegun is An Element Of The Offense for Violating 18 U.S.C. § 922(o) And the Existence of any Defect or the Lack of an Irreplaceable Part Are Issues For The Jury To Consider**.

To establish liability under 18 U.S.C. § 922(o), the government must prove that a weapon is a machinegun within the meaning of 26 U.S.C. § 5845(b). That statute provides in its entirety:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

As recognized in the statutory language, some weapons that are designed to shoot automatically may no longer do so as a result of some defect. This Court has held that where the defect is a minor flaw that is readily reparable, the weapon remains a machinegun under the statute. *United States v. Kuzma,* 967 F.3d 959, 969 (9th Cir. 2020). However, if the weapon is "'lacking 'irreplaceable' parts necessary to shoot automatically' or 'a device that no reasonable effort could render capable of automatic fire'" then it is no longer classifiable as a machinegun. *Id.* (*quoting United States v. McCauley,* 601 F.2d 336, 341 (8th Cir. 1979)).[7]

Whether a weapon qualifies as a machinegun is an element of the charge which must be found by the jury based on proof beyond a reasonable doubt. *United States v. O'Brien*, 560 U.S. 218, 231-35 (2010). And the government

---

[7] The part lacking in *McCauley* was a magazine, but the evidence at trial established that such magazines could be obtained. 601 F.2d at 338, 341.

must prove that the owner of the weapon knew that the weapon functions as a machinegun. *See, e.g., Staples v. United States*, 511 U.S. 600, 606-07 (1994).

**C.   Mr. Kittson's Intended Defense Based On: The Unique Nature of the Machinegun; the Need For Specific Magazines to Allow it to Fire Automatically; The Fact that it was Sold by Bohanan With a Magazine That Was Not Operable; And, the Likelihood that Bohanan Believed That the Machingun Would Not Operate as an Automatic Weapon.**

The machinegun that Ray Bohanan sold to Agent Weber was a unique weapon, a World War II era gun that had been semi-mass produced in Russia. Expert John Robert Nixon testified at length about the specifics of the weapon, and how the weapons were manufactured with specifically matching magazines, magazines that were stamped with the same serial number as the gun itself, and, how without a matching magazine it would not be possible to fire the weapon automatically. 2-ER-168. There was significant evidence that the magazine sold by Bohanan with the machinegun did not work, and could not be made to work. 3-ER-410.

Mr. Kittson documented that Bohanan arranged the sale of this machinegun through Mr. Kittson; used a location where Bohanan did not live and that could not be traced to him; never provided Agent Weber a phone number or address; and, informed Agent Weber that he would only work through Mr. Kittson. 3-ER-351-52. Evidence also established that the

confidential informant, Nicki, who had originally arranged for Agent Weber to contact Mr. Kittson about purchasing the machinegun, was a friend, possibly a girlfriend, of Ray Bohanan. *See, e.g.,* 3-ER-452-466, 2-ER-127-28.

Additional evidence confirmed that Bohanan was a gun aficionado who possessed at least one, and possibly two, other fully automatic weapons that he was not selling to Agent Weber. 3-ER-302. And evidence confirmed that Bohanan was a survivalist, who was planning to retreat to a camp he had built in rural Oregon shortly after the sale of this machinegun. 3-ER-467, 4-ER-546.

All of this evidence supported an inference that Bohanan did not believe that the weapon would operate as a fully automatic machinegun because he did not have an appropriate magazine, and that he had used Mr. Kittson as a go-between so that the purchaser of the weapon would not be able to track Bohanan down upon learning that the weapon would not fire automatically. Bohanan's belief that the weapon would not function as a fully automatic weapon establishes a defense to charges under *Staples*, and because Mr. Kittson only aided and abetted Bohanan's conduct, he was entitled to rely on the same defense.

### D.   The District Court's Instruction That Removed This Defense From the Jury, Directing a Verdict on a Contested Element of the Offense.

When the parties originally filed their proposed jury instructions, neither proposal sought an instruction regarding the magazine and its necessity to render the machinegun operable. At the pretrial conference held a few days before trial, and after discussion of issues regarding Mr. Kittson's defense, the court ordered the parties to brief "whether a firearm without an operable magazine can still be a machinegun." 5-ER-947 (ECF-95.) After briefing, the district court stated that it intended to provide the following instruction to the jury:

> A weapon need not be equipped with a functioning magazine to qualify as a machinegun, as long as the government proves that the weapon shoots, is designed to shoot, or can be readily restored to shoot, automatically as defined by this instruction.

2-ER-67. Mr. Kittson objected to this instruction, noting that whether the weapon was a machinegun was an element of the crime to be determined by the jury; that the instruction was not supported by the statutory definition of "machinegun"; the instruction was not approved or supported in any prior case law; and, the instruction did not appear to have been given previously by any court in a trial of this charge. 5-ER-805-06.

After defense expert John Nixon testified regarding the uniqueness of the PPSh-41; the issues with the magazines for these weapons; and, the critical

-44-

need for an appropriate magazine for this weapon fire automatically, Mr. Kittson renewed his objection to the court's proposed instruction. In addition to the objections previously asserted, Mr. Kittson noted that the instruction removed an element of the crime from the jury's consideration, directing a verdict on this question; deprived Mr. Kittson of his right to be presumed innocence of the charge; relieved the government of its obligation to prove that the weapon qualified as a machinegun beyond a reasonable doubt; and, deprived Mr. Kittson of his right to confront the evidence against him and present a defense – all in violation of his constitutional rights under the Sixth Amendment. 1-ER-176, *see also* 5-ER-804. The district court overruled the objections and provided the instruction to the jury.

### E. This was a Highly Contested Issue so this Instructional Error Cannot be Found Harmless and Reversal is Required.

A jury's "overriding responsibility is to stand between the accused and a potentially arbitrary or abusive" government. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73 (1977). A jury cannot perform this responsibility if a trial judge directs a verdict on a contested issue. *Id.* (*citing Sparf & Hansen v. United States*, 156 U.S. 51, 105 (1895); *Carpenters v. United States*, 330 U.S. 395, 408 (1947)). Therefore, a trial judge is "barred from attempting to override or interfere with the jurors' independent

judgment in a manner contrary to the interests of the accused." *Martin Linen*, 430 U.S. at 573.

This Court reviews a jury instruction that omits an element of an offense, thus interfering with the jurors' judgment, for harmless error. *United States v. Hansen*, 97 F.4th 677, 681 (9th Cir. 2024) (*citing Neder v. United States*, 527 U.S. 1, 8–10 (1999)). "'The Government's burden in proving harmless error is a high one' when the district court omits one of the elements of the crime charged." *Hansen*, 97 F.4th at 681 (*quoting United States v. Montoya-Gaxiola*, 796 F.3d 1118, 1124 (9th Cir. 2015)). The same standard applies when the element is not simply omitted, but wholly removed from the jury's consideration.

As this Court just confirmed in *Hansen*, relying on *Montoya-Gaxiola*, if the evidence related to the element is contested, and the government's evidence is not overwhelming, the error cannot be found harmless. *Hansen*, 97 F.4th at 681 (*quoting Montoya-Gaxiola*, 796 F.3d at 1125).

The question of whether the weapon functioned as a machinegun was highly contested. Mr. Kittson presented significant evidence that this weapon, as sold to Agent Weber, did not fire automatically; that the magazine sold with the weapon could not be repaired to function automatically; that this type of World War II era machinegun was manufactured with its own specific

-46-

magazines and had well-recognized functionality problems without those magazines; and, that Ray Bohanan was likely aware that the weapon would not fire automatically and that it would be difficult to impossible to obtain a working magazine in order to make it function automatically. It is not clear beyond a reasonable doubt that a properly instructed jury would have convicted Mr. Kittson on Count 1 under the aiding and abetting theory. Therefore, this error cannot be deemed harmless. *Hansen*, 97 F.4th at 971.

This Court should reverse Mr. Kittson's conviction and remand for a new trial before a properly instructed jury.

## IV. The Sentencing Proceeding Violated Mr. Kittson's Constitutionally Protected Rights To Due Process And A Fair And Impartial Adjudicator When The Court Resolved A Disputed Fact Based, Not On Any Evidence Provided By The Government, But Instead Based On The Court's Prior Personal Practice.

### A. Standard of Review.

The constitutionality of a sentence imposed under the Guidelines is reviewed *de novo*. *United States v. Henderson*, 998 F.3d 1071, 1073 (9th Cir. 2021). Sentences that are entered in a manner that is procedurally erroneous must be set aside. *See Gall v. United States*, 552 U.S. 38, 46 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007); *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008).

-47-

**B. The District Court's Fact Findings Were Not Based On Evidence Produced by the Government, But Instead on the Court's Prior Personal Practice as a Judge in the Oregon State Courts, Requiring Reversal**.

Mr. Kittson contested whether his prior diversionary plea and sentencing for a DUI should score for criminal history under the United States Sentencing Guidelines, because there was no evidence that the plea had been entered during a judicial proceeding in open court as required by U.S.S.G. 4A1.2(f) and Application Note 9 thereto. It was incumbent upon the government to come forward with appropriate evidence confirming that this diversionary sentence met the requirements to scored under the Guidelines. *See, e.g., United States v. Ameline,* 409 F.3d 1073, 1085 (9th Cir. 2005) (*en banc*) ("when a defendant raises objections to the PSR, the district court is obligated to resolve the factual dispute, *see* Fed.R.Crim.P. 32(i)(3)(B), and the government bears the burden of proof")(*citing United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir.1990)); *United States v. Felix,* 561 F.3d 1036, 1045 (9th Cir. 2009) (applying the burden to the calculation of criminal history points).

The government did not produce any evidence, but the district court determined that it would award a criminal history point for this conviction based on the court's own prior personal practice as a judge on the Multnomah County Circuit Court (a different circuit then that addressing Mr. Kittson's DUI). The district court informed the parties that she had required

-48-

diversionary plea agreements to be entered in a judicial proceeding that occurred before her, and therefore concluded that the same process must have been followed for Mr. Kittson's case in Marion County. 1-ER-13.

A district court may consider a variety of types of evidence in resolving contested sentencing issues. *Felix*, 561 F.3d at 1042. However, a court may not ever become a witness itself. While a judge "'may analyze and dissect the evidence," they "may not either distort it or add to it.'" *United States v. Alfaro,* 336 F.3d 876, 883 (9th Cir. 2003) (*quoting Quercia v. United States*, 289 U.S. 466, 470 (1933)). "Due process requires the judge to remain 'impartial and disinterested.'" *Alfaro*, 336 F.3d at 883 (*quoting Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980)).

The district court's determination of this issue based on her own personal practice made the court a witness, a witness that Mr. Kittson could not realistically seek to cross-examine and test their credibility because the witness was also the fact-finder. The court's conduct and the findings based thereon were not only improper, they violated Mr. Kittson's constitutionally protected right to Due Process and demonstrates "that the judge abandoned the "'requirement of neutrality in adjudicative proceeding[.]'" *Alfaro,* 336 F.3d at 884 (*quoting Marshall*, 446 U.S. at 242).

Mr. Kittson's sentencing proceeding was both procedurally infirm and unconstitutional. A grant of relief is required. This matter should be reversed and remanded for a new sentencing proceeding.

## CONCLUSION

Mr. Kittson requests that the Court vacate his conviction and direct a judgment of acquittal because his conduct was protected under 18 U.S.C. § 922(o)(2)(A), and because the near total ban on machinegun ownership set forth in § 922(o) violates the Second Amendment.

In the alternative, Mr. Kittson requests that the case be remanded for a new trial because the jury instructions, given by the trial court over Mr. Kittson's objections, were erroneous and constitutionally infirm. The court refused to instruct the jury on the statutory elements of the offense as set forth in subsection (o)(2)(A), and gave an instruction that directed a verdict on the contested issue of whether the PPSh-41 operated as a machinegun.

If the Court does not vacate the conviction, Mr. Kittson requests a remand for a new sentencing proceeding because the trial court determined Mr. Kittson's criminal history calculation based on the court's own personal prior practice as a judge in the Oregon state courts, rather than on any evidence presented in the record.

Respectfully submitted, this 13th day of May, 2024.


_/s/ Michael Charles Benson_          _/s/ C. Renée Manes_
Michael Charles Benson              C. Renée Manes
Assistant Federal Public Defender    Assistant Federal Public Defender

Attorneys for Defendant-Appellant

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | CA Nos. 23-4132 |
| v. | ) | |
| | ) | |
| DANIEL KITTSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

---

**CERTIFICATE OF RELATED CASES**

---

We, Michael Benson and C. Renée Manes, undersigned counsel of record for Defendant-Appellant, Daniel Kittson, state pursuant to the Ninth Circuit Court of Appeals Rule 28-2.6, that there are no appeals currently pending that presents a closely related issue under the terms of the Rule.

Respectfully submitted this 13th day of May, 2024.


*/s/ Michael Charles Benson*      */s/ C. Renée Manes*
Michael Charles Benson         C. Renée Manes
Assistant Federal Public Defender    Assistant Federal Public Defender

Attorneys for Defendant-Appellant

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | CA Nos. 23-4132 |
| v. | ) | |
| | ) | |
| DANIEL KITTSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

**BRIEF FORMAT CERTIFICATION
PURSUANT TO RULE 32(a)(7)(C)**

_____

Pursuant to Ninth Circuit Rule 32(a)(7)(C), we certify that the

APPELLANT'S OPENING BRIEF is proportionately spaced, has a typeface of

14 points or more and contains approximately 11,562 words.

Dated this 13th day of May, 2024.


_/s/ Michael Charles Benson_____          _/s/ C. Renée Manes_____
Michael Charles Benson                    C. Renée Manes
Assistant Federal Public Defender         Assistant Federal Public Defender

Attorneys for Defendant-Appellant